# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JASON JAMES NEIHEISEL,

      Movant,

vs.                                       Case No.:   3:20-cv-313-BJD-JBT
                                                            3:17-cr-089-BJD-JBT

UNITED STATES OF AMERICA,

      Respondent.
_____/

## ORDER

This cause is before the Court on the Report and Recommendation (Civ. Doc. 57, "Report")[1] entered by the Honorable Joel B. Toomey, United States Magistrate Judge, Movant Jason Neiheisel's Objections to the Report (Civ. Doc. 58), and the United States' Response to the Objections (Civ. Doc. 59). In the Report, the Magistrate Judge considered Neiheisel's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 14.)[2]

---

[1] "Civ. Doc. #" refers to docket entries in the § 2255 case, No. 3:20-cv-313-BJD-JBT. "Crim. Doc. #" refers to docket entries in the criminal case, No. 3:17-cr-89-BJD-JBT.

[2] Neiheisel raises five claims of ineffective assistance of trial counsel. He contends that his trial attorney, Thomas Bell, was constitutionally ineffective because he failed to: (1) pursue an alibi defense; (2) present evidence, investigate witnesses, or establish through cross-examination that he owned no other computers besides his personal tablet and that someone else could have caused the distribution of child pornography from his internet protocol (IP) address; (3) impeach FBI Special Agent Nicholas Privette about allegedly misleading grand jury testimony or present evidence showing that Neiheisel's employer-issued work laptop contained no child pornography; (4) investigate certain computer forensic evidence, such as "GUID" evidence (a Microsoft Windows term) or the Torrential Downpour law enforcement software program; and (5) effectively use his computer forensics expert, Richard Connor.

Following a three-day evidentiary hearing, the Magistrate Judge recommended that the Court deny the Amended § 2255 Motion.

In his Objections, Neiheisel concedes that the Magistrate Judge's "factual findings are for the most part accurate and detailed." Objections ¶ 2. However, Neiheisel objects to the Magistrate Judge's conclusions of law and certain credibility findings. The United States argues that the Magistrate Judge's findings of fact and conclusions of law are correct and urges the Court to overrule the Objections and deny the Amended § 2255 Motion.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of fact are filed, the district court is not required to conduct de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); 28 U.S.C. § 636(b)(1). If, on the other hand, a party files an objection, the district judge must review de novo the portions of a magistrate judge's report and recommendation to which the party objects. Kohser v. Protective Life Corp., 649 F. App'x 774, 777 (11th Cir. 2016); 28 U.S.C. § 636(b)(1); see also Rule 8(b), Rules Governing § 2255 Proceedings in the United States Dist. Courts ("The judge must determine de novo any proposed finding or recommendation to which objection is made."). The Court reviews de novo the Magistrate Judge's legal conclusions to which Petitioner objected. 28 U.S.C. § 636(b)(1).

## I. Background

The background of the case is set forth at pages 3 through 8 of the Report. In 2018, Neiheisel went to a jury trial on two counts of distributing child pornography. The jury convicted him of both counts, and the Court sentenced him to a term of 84 months in prison. (Crim. Doc. 102, Judgment.)[3] Neiheisel challenged his conviction on direct appeal. The Eleventh Circuit rejected his arguments (but declined to address an ineffective assistance claim) and affirmed his conviction and sentence. United States v. Neiheisel, 771 F. App'x 935 (11th Cir. 2019). These § 2255 proceedings timely followed.

## II. The § 2255 Evidentiary Hearing

The Magistrate Judge conducted an evidentiary hearing on the Amended § 2255 Motion on December 21, 2021, April 12, 2022, and April 13, 2022. (See Civ. Doc. 32, December 2021 Transcript; Civ. Doc. 43, April 2022 Transcript Vol. I; Civ. Doc. 44, April 2022 Transcript Vol. II.) At the hearing, the Magistrate Judge heard testimony from six witnesses. The government called FBI Special Agent Nicholas Privette and trial counsel Thomas Bell. Report at 8. Neiheisel called attorney David Lamos; his father, Thomas Neiheisel; his friend, Bryan Hafertepe; and his computer forensics expert from the trial, Richard Connor. Id. Neiheisel did not testify. Neiheisel submitted thirteen

---

[3] Neiheisel was ultimately sentenced only on Count One of the Indictment because, at defense counsel's urging, the United States moved to dismiss Count Two as multiplicitous and the Court granted that motion.

exhibits for the Court's consideration and the government submitted four exhibits. Id.

The Magistrate Judge found that Privette and Bell were "credible and reliable witnesses" and generally accepted their testimony. Id. As for Mr. Neiheisel and Mr. Hafertepe, the Magistrate Judge found that they "appeared sincere but had limited knowledge of the facts," and that Mr. Neiheisel, as the movant's father, "had an understandable interest in the outcome." Id. As for Mr. Lamos, who testified as a purported expert on attorney performance, the Magistrate Judge found his testimony to be unhelpful and gave it little to no weight. Id. at 16–19. And the Magistrate Judge found Mr. Connor to be "forthright," id. at 8, but credited Bell's recollection over Connor's memory on a discrepancy about whether they had discussed an alibi defense, id. at 44–45.

The Magistrate Judge determined that each of Neiheisel's grounds failed and recommended that the Court deny the Amended § 2255 Motion. Id. at 2–3, 25–46. About the first ground, the Magistrate Judge recommended that Bell was not ineffective for declining to pursue an alibi defense because Neiheisel's alibi—a trip from Jacksonville, Florida to Cincinnati, Ohio on the evening of Sunday, February 7, 2016—did not align with the child pornography-related file-sharing activity coming from Neiheisel's IP address. Id. at 3, 25–31. The Magistrate Judge found that Bell pursued a reasonable trial strategy, which was to attack the investigation, point out gaps in the government's evidence,

suggest that someone else could have hijacked Neiheisel's Wi-Fi network, and emphasize the government's burden of proof. Id. at 30–31. As for the second ground, the Magistrate Judge determined that Bell was not ineffective for not investigating Bryan Hafertepe or Neiheisel's fiancée, Dana Hall, as potential witnesses or suspects, and that contrary to Neiheisel's allegations, Bell argued at trial that someone else may have hijacked and used Neiheisel's Wi-Fi network to share child pornography. Id. at 31–36. As for the third ground, the Magistrate Judge found that Bell was not ineffective for not cross-examining Agent Privette about an explainable discrepancy in his grand jury testimony. Id. at 36–39 & n.16. As for Bell's failure to introduce evidence affirmatively proving that Neiheisel's employer-issued work laptop contained no evidence of child pornography, the Magistrate Judge was doubtful whether Bell performed deficiently. Id. at 39–40 & n.17. But even if Bell performed deficiently, the Magistrate Judge recommended that Neiheisel was not prejudiced. Id. at 40–42. As for the fourth ground, the Magistrate Judge recommended that Bell was not ineffective for not pursuing further investigation of Torrential Downpour and GUID evidence because Bell's computer forensics expert (Richard Connor) had not recommended pursuing those avenues and because Neiheisel failed to point to any actual exculpatory evidence that would have come from investigating those sources. Id. at 42–44. Finally, as for the fifth ground, the Magistrate Judge recommended that Bell provided Connor with reasonable

discovery and was not ineffective for not having Connor investigate such things as Torrential Downpour, Neiheisel's Wi-Fi router, or Neiheisel's work laptop. Id. at 44–46.

### III. Discussion

The Sixth Amendment to the United States Constitution guarantees a defendant the right to the effective assistance of counsel. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 686 (1984). To obtain relief on a claim of ineffective assistance of counsel, a § 2255 movant must establish: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland, 466 U.S. at 687.

Consistent with 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing § 2255 Proceedings, the Court has reviewed de novo each portion of the Report and Recommendation to which Neiheisel objects. The Court concludes that the objections are due to be overruled and the Amended § 2255 Motion denied.

*Objections in General:*

Although Neiheisel identifies portions of the Report and Recommendation to which he objects, he cites no specific part of the transcripts or exhibits to support his objections. Instead, he broadly "incorporates and relies upon the Amended Petition and Reply, the trial proceedings, the evidence and testimony introduced at the Hearing, [DE 32, 43, 44] and the Petitioner's summary of the

6

argument [DE 52]." Objections ¶ 3. Without specific citations to transcripts or exhibits, it is hard to verify Neiheisel's objections. And it is unduly burdensome for a court to comb the record in search of factual support for a party's arguments. See Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (admonishing plaintiff for not providing proper citations to the appendix and observing that "Judges are not like pigs, hunting for truffles buried in the record." (internal quotation marks and citation omitted)). He also provides only one citation to authority. Objections ¶ 9 (citing Goodwin v. Balkom, 684 F.2d 794 (11th Cir. 1982)). Neiheisel may have done enough to preserve his objections, see Johnson v. Zema Sys. Corp., 170 F.3d 734, 741 (7th Cir. 1999) (to preserve an objection under Federal Rule of Civil Procedure 72(b), a party need "only to specify which issue for which review is sought and not the factual or legal basis of the objection."), but that does not mean he has done enough to show his objections have merit, see Buford v. Life Storage, LP, No. 1:16-cv-2294-WMR, 2020 WL 10817484, at *1 (N.D. Ga. Jan. 7, 2020) (overruling objections to report and recommendation where plaintiff "fail[ed] to support his allegations with specific citations to the record.").

Despite the lack of specific record citations, the Court has undertaken a de novo review of each objection and finds the objections are due to be overruled. While the Court has reviewed each one of Neiheisel's objections de novo, the Court writes below to specifically address certain matters.

### *Objections, Paragraphs 2 and 9: Cumulative Prejudice*

Neiheisel objects that the Magistrate Judge "fail[ed] to apply the correct standard of proof as it pertains to the cumulative prejudicial effect of the issues raised by Petitioner in their totality." Objections ¶ 2. He contends that "[t]he Magistrate [Judge] failed to take into account the standard to be used in relation to multiple issues of ineffective assistance of counsel." Id. ¶ 9.[4]

The prejudicial effect of an attorney's deficient acts or omissions must be measured both individually and cumulatively because a collection of errors that are harmless in isolation may be prejudicial in the aggregate. See Pye v. Warden, Ga. Diagnostic Prison, 50 F.4th 1025, 1055 (11th Cir. 2022). "However, [the Eleventh Circuit has] noted that '[w]here there is no error or only a single error, there can be no cumulative error.'" Vanaman v. United States, No. 16–15452–E, 2017 WL 11684637, at *5 (11th Cir. Sept. 1, 2017) (rejecting § 2255 movant's claim of cumulative error based on multiple ineffective assistance claims (quoting United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011))). "While the prejudice inquiry should be a cumulative one as to the effect of all of the failures of counsel that meet the performance deficiency requirement, only the effect of counsel's actions or inactions that do meet that deficiency requirement are considered in determining prejudice." Evans v. Sec'y, Fla. Dep't

---

[4]  Throughout the Objections, Neiheisel refers to Judge Toomey as "Magistrate Toomey" or simply "Toomey." While this is a common mistake, the Court gently reminds counsel that the correct title is "Magistrate Judge" or "Judge," and that a United States Magistrate Judge should be addressed as such.

of Corr., 699 F.3d 1249, 1269 (11th Cir. 2012).

Here, the Magistrate Judge found at most only a single deficiency in Bell's performance, which concerned his failure to introduce evidence proving that Neiheisel's employer-issued work laptop was free of child pornography. The Magistrate Judge recommended that this omission was not prejudicial under the circumstances. Report at 40–42. As for all other claims, the Magistrate Judge found that Bell's performance was not deficient. Because the Magistrate Judge did not find multiple deficient acts or omissions, a cumulative prejudice analysis was unnecessary.

In any event, applying a cumulative prejudice analysis de novo would not change the outcome. For Grounds One, Two, Four, and Five, the evidence of prejudice was non-existent, speculative, or refuted by other evidence. For example, in Grounds Four and Five, Neiheisel alleged that counsel was ineffective for failing to investigate—or have his computer forensics expert investigate—GUID evidence, Torrential Downpour, and Neiheisel's Wi-Fi router. But Neiheisel produced no actual exculpatory evidence from any of these sources. See id. at 42–46. A complete failure to show any prejudice on an individual claim does not contribute to a finding of cumulative prejudice. Because a cumulative prejudice analysis would not have made a difference, this objection will be overruled.

### *Objections, Paragraph 4: Prejudice in General*

Neiheisel argues that the Magistrate Judge's conclusion that he was not prejudiced under Strickland was unreasonable. Objections ¶ 4. Neiheisel states that "Magistrate Toomey indicated in his findings that the evidence was not overwhelming" and that the jury required an Allen charge during its day-and-a-half of deliberations. Id.

In the same sentence where Judge Toomey remarked that the evidence was not overwhelming, he remarked that the evidence "was not weak either." Report at 42. And indeed, the government's evidence at trial was not weak. Two FBI agents gave consistent, detailed testimony that during two interviews in April 2017, Neiheisel admitted to them he had downloaded child pornography––including the videos charged in the Indictment—and saved it in a shared downloads folder connected to BitTorrent. Corroborating their testimony were the undisputed facts that the child pornography charged in the Indictment was shared from Neiheisel's IP address and that Neiheisel's Wi-Fi network required a password to gain access. Plus, the BitTorrent client program that disseminated child pornography from Neiheisel's IP address was the same program that had been deleted from his Microsoft Surface tablet: Vuze 5.7.0.0. Neiheisel also chose to testify and, as the Eleventh Circuit pointed out, "[i]f the defendant testified at trial, the jury is free to disbelieve his statements and consider them as substantive evidence of his guilt." Neiheisel, 771 F. App'x at

938 (citing United States v. Shabazz, 887 F.3d 1204, 1220 (11th Cir. 2018)). Indeed, aspects of Neiheisel's testimony seemed incongruous. For example, he testified that he told the FBI agents he had never heard of BitTorrent before meeting them (Crim. Doc. 120, Trial Tr. Vol. III at 203), but he admitted installing and using Vuze (a BitTorrent program) to download movies, yet he claimed he did not know Vuze was a BitTorrent program, id. at 206, 238–39. And Neiheisel generally seemed evasive on cross-examination. See id. at 233–77. The Court now knows that Neiheisel failed a polygraph before trial, see Report at 13–14, which the Court notes only because it increases the likelihood that the jury "disbelieve[d] his statements and consider[ed] them as substantive evidence of his guilt," Neiheisel, 771 F. App'x at 938. Thus, the Magistrate Judge correctly assessed that the evidence was "not weak."

Although the jury deliberated for a day and a half, required an Allen charge, and twice said it was stuck, Judge Toomey considered those facts. Report at 42 n.18 (observing as well that the jury sent a note at one point stating the vote was 10–2). And while "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support," Strickland, 466 U.S. at 696, the length of the jury's deliberations correlates only imperfectly (if at all) with the strength of the evidence of guilt. A jury can return a swift guilty verdict even in a close case or it can deliberate at length when the evidence of guilt is strong, depending on

the idiosyncrasies of particular jurors. But the prejudice analysis "should not depend on the idiosyncracies of the particular decisionmaker" or be affected by "evidence about the actual process of decision, if not part of the record of the proceeding under review." Id. at 695. One can only speculate why two of the jurors took longer than the others to reach a guilty verdict. But Strickland teaches courts to measure prejudice by an objective yardstick: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Judged by this rubric, and considering the particular evidence and arguments raised at trial, the Magistrate Judge correctly concluded that Neiheisel did not suffer prejudice, either as to any particular ground or overall.

***Objections, Paragraphs 5 and 15: Prejudice Analysis as to Ground Three***

Neiheisel objects to the Magistrate Judge's prejudice analysis of his claim in Ground Three, where he alleges that Bell was ineffective for not introducing evidence proving that his employer-issued work laptop contained no child pornography. As part of his finding that Neiheisel was not prejudiced, the Magistrate Judge said it was "[unlikely] that the jury thought Petitioner committed the offense using the work laptop anyway." Report at 3; see also id. at 40–41. Neiheisel argues this "was a conclusion the Magistrate [Judge] had no justification to make. He cannot place his own belief in what the jury would have thought about the evidence that they were never presented with or been

12

provided argument about its application to the case." Objections ¶ 5 (emphasis in original); see also id. ¶ 15.

This objection is misplaced. Neiheisel overlooks the fact that "the prejudice inquiry necessarily requires a court to speculate as to the effect of omitted evidence on the entire evidentiary picture before a judge or jury." Feliciano v. United States, 500 F. App'x 905, 909 (11th Cir. 2012) (citing Sears v. Upton, 130 S. Ct. 3259, 3266 (2010)); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1251 & n.48 (11th Cir. 2014) (recognizing that the Brady materiality test, which is identical to the Strickland prejudice test, "will necessarily require a court to 'speculate' as to the effect of the new evidence" (quoting Sears, 130 S. Ct. at 3266)). To assess the probability of a different outcome under Strickland, a court must consider the totality of the evidence, "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings." 466 U.S. at 695–96. This task inherently requires a judge to step into the shoes of the decisionmaker and think about the impact of new evidence on the outcome of the proceedings. See Sears, 130 S. Ct. at 3266.

Moreover, the Magistrate Judge's conclusion that it was unlikely "the jury thought Petitioner committed the offense using the work laptop anyway" was based on facts and arguments raised at trial. As the Magistrate Judge observed, the jury knew (because Bell pointed it out) that (1) the FBI had been in touch with Neiheisel's employer about his work laptop, and (2) the government

13

neither tried to collect nor presented any evidence of contraband on the work laptop. Report at 40–41. Based on these facts, plus the jury's likely recognition of "the general improbability that a person of reasonable intelligence … would use a work computer instead of a personal device to engage in this type of activity," the Magistrate Judge found that the jury likely did not think Neiheisel would have used his work laptop to distribute child pornography. Id. As a result, the Magistrate Judge said, "Bell's failure to affirmatively prove that [Neiheisel's] work laptop was clean did not 'alter the entire evidentiary picture.'" Report at 41 (cleaned up) (quoting Strickland, 466 U.S. at 696). And, the Magistrate Judge noted, the government did not have to prove that Neiheisel used a specific computer. So even if Bell had eliminated the work laptop as a potential source of child pornography, it would not have foreclosed the government's argument that Neiheisel had used some other unknown device. Id. Between these facts and the evidence of Neiheisel's guilt, the Magistrate Judge concluded that Neiheisel was not prejudiced by Bell's failure to introduce evidence proving that the work laptop was clean. Id. at 40–42. The Court agrees with this analysis.

Neiheisel objects that "[b]elief in a [third] computer being utilized would have been rank speculation." Objections ¶ 5. But that is no more speculative than the government's argument at trial—which the Eleventh Circuit approved—that Neiheisel could have used an unknown device besides his tablet

14

to distribute child pornography. See Neiheisel, 771 F. App'x at 942. As the Eleventh Circuit pointed out, the government did not have to prove that Neiheisel used a particular computer, only that he distributed child pornography. Id. at 939–40. And here, there was ample evidence to support the jury's conclusion that Neiheisel distributed child pornography, even if it did not know exactly which device he used. Thus, these objections will be overruled.

### *Objections, Paragraphs 5 through 8, 10 through 13, and 16: Analysis of Ground One and the Alibi Defense*

Neiheisel objects to the Magistrate Judge's recommendation that Bell presented a cogent defense strategy and was not ineffective for declining to pursue an alibi defense. For the reasons stated in the Report and Recommendation, this objection is overruled. See Report at 25–31.

Neiheisel also objects to the Magistrate Judge's decision to credit Thomas Bell's and Agent Privette's testimonies, as well as the findings of fact and conclusions of law drawn from them.[5] Following de novo review, the Court does

---

[5] For example, Bell testified he was confident he and Connor discussed a potential alibi, April 2022 Tr. Vol. I at 132, while Connor said he did not remember having that conversation, id. at 223–24. The Magistrate Judge credited Bell's recollection over Connor's because (1) "[a]s the trial attorney, Bell had more prolonged and intensive involvement in the case than Connor," and (2) "it appear[ed] inconsistent for Connor to say that he did not know Petitioner was out of town on February 7 and 8, 2016, yet he had information from his forensic exam that Petitioner's tablet had connected to a hotel Wi-Fi in Cincinnati on those same dates." Report at 44–45 (internal citations omitted).

Neiheisel does not specifically object to the first reason for crediting Bell's memory but he objects to the second. He argues that the Magistrate Judge misconstrued Connor's testimony. According to Neiheisel, "Connor confirmed that Petitioner had been out of town through a subsequent forensic evaluation after the trial when he was asked to evaluate the potential Alibi evidence, not before." Objections ¶ 8 (emphasis in original); see also id. ¶ 16. But Connor never said he conducted a second forensic examination after trial. He said that

15

not find Neiheisel's objections persuasive. The Magistrate Judge, who observed the witnesses' testimonies and demeanors, did not err in his credibility determinations. And the Magistrate Judge's findings of fact and conclusions of law were supported by the testimony and evidence on record.

Neiheisel particularly objects to the Magistrate Judge's rejection of his theory about an ICACCOPS internet activity log (Petitioner's Exhibit 11). See Report at 27–29. Neiheisel argues that the ICACCOPS log shows that someone else was distributing child pornography from his IP address while he was in Cincinnati, Ohio, supporting his alibi defense. He also argues that the Magistrate Judge should not have rejected his theory about the ICACCOPS log because neither Bell nor Privette was an expert on ICACCOPS, Bell allegedly did not review the ICACCOPS log[6], and the government did not disprove

---

after speaking with Neiheisel's current attorneys about an alibi, he looked back at "information from [his] forensic exam that showed the computer connecting to … a hotel wifi or something in Cincinnati the night of [February] 7th or 8th, [2016] or the morning of the 8th." April 2022 Tr. Vol. I at 225. What Connor appeared to say is that information showing Neiheisel was in Cincinnati on the evening of February 7 and 8, 2016 (a point nobody disputes) was there all along, but he did not notice it or recognize its significance until after trial. Besides, even if the Magistrate Judge misconstrued this part of Connor's testimony, his first reason for crediting Bell's recollection about discussing a possible alibi—that "Bell had more prolonged and intensive involvement in the case than Connor"—still stands.

[6]   Neiheisel claims that Bell allegedly admitted he did not review the ICACCOPS log, but Neiheisel fails to cite where in the record Bell made that admission. Besides, the record does not support that claim. Bell testified that he reviewed the discovery. April 2022 Tr. Vol. I at 16. When asked about the ICACCOPS log specifically, Bell said he did not know what the acronym stands for and did not recall the document off the top of his head, but he explained he had "not looked at this in a long time" and that he "would have learned what it was." Id. at 119–20. That is not an admission that Bell did not review the ICACCOPS log. Bell also testified that he thought he provided a copy of the ICACCOPS log to Connor along with the Torrential Downpour logs, id. at 120, 132, and Connor confirmed that Bell had given him a copy of the ICACCOPS log, id. at 227.

Neiheisel's interpretation of the ICACCOPS log. But the Magistrate Judge correctly noted that the burden rests on Neiheisel, not the government, to prove what the ICACCOPS log means, and Neiheisel failed to carry that burden. Report at 29 (citing <u>Beeman v. United States</u>, 871 F.3d 1215, 1222–23 (11th Cir. 2017)). Also, the Magistrate Judge did not rely on Bell's and Privette's testimony alone in rejecting Neiheisel's theory about the ICACCOPS log. Neiheisel's own witness and computer expert, Richard Connor, admitted he could not say for sure what the ICACCOPS log showed. April 2022 Tr. Vol. I at 228, 232–33, 243. The Magistrate Judge considered the ICACCOPS log itself and observed that it offers no useful information. Report at 27–28. Indeed, each entry on the ICACCOPS log contains only three pieces of data: a date and time, an IP address, and an infohash. <u>See</u> Petitioner's Exhibit 11. But the ICACCOPS log does not describe what activities are displayed, whether it be an actual connection between two computers, a failed attempt to connect, or something else. That contrasts with the Torrential Downpour logs—the type of log that informed Privette's testimony and which undercut Neiheisel's alibi—which detailed the file-sharing activities involving Neiheisel's IP address. <u>See</u> Report at 9–10, 26–28; <u>see also</u> Government's Exhibit 1. Thus, these objections are due to be overruled.

### *Objections, Paragraph 14: Grand Jury Testimony*

Neieheisel objects to the Magistrate Judge's recommendation that Bell was not ineffective for not cross-examining Agent Privette about an explainable discrepancy in his grand jury testimony. Objections ¶ 14; see also Report at 37–39. The Magistrate Judge did not err in his findings of fact or his conclusion that Bell's performance was neither deficient nor prejudicial. Besides, even if Bell had impeached Privette about his prior grand jury testimony, it would not have affected the credibility of the second FBI agent (Jonathan MacDonald), who also testified about the investigation and Neiheisel's confessions. Report at 39 n.16. This objection will be overruled.

### IV.   Conclusion

The Court has undertaken a de novo review of each of Neiheisel's objections to the Report and Recommendation. Following that review, the Court concludes that the objections are due to be overruled, the Report and Recommendation adopted, and the Amended § 2255 Motion denied.

Accordingly, it is hereby **ORDERED:**

1. Movant Jason Neiheisel's Objections (Civ. Doc. 58) to the Report and Recommendation are **OVERRULED**, the Report and Recommendation (Civ. Doc. 57) is **ADOPTED** as the Court's opinion, and the Amended § 2255 Motion (Civ. Doc. 14) is **DENIED**.

2. The Clerk will enter judgment for the United States and against Neiheisel and close the file.

3. If Neiheisel appeals the denial of the § 2255 motion, the Court denies a certificate of appealability (COA).[7] Because this Court has determined that a COA is not warranted, the Clerk will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination will serve as a denial of the motion.

**DONE AND ORDERED** in Jacksonville, Florida this 9th day of November, 2022.

_/s/ Brian J. Davis_
BRIAN J. DAVIS
United States District Judge

lc 19
Copies:
Parties and counsel of record
Hon. Joel B. Toomey, United States Magistrate Judge

---

[7] This Court should issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court finds that a COA is not warranted.